Froessel, J.
This is an action for a declaratory judgment. Plaintiff-appellant, County of Erie (hereinafter sometimes called County), moved for judgment on the pleadings under rule 112 of the Rules of Civil Practice. A like cross motion was made by defendant-respondent, City of Buffalo (hereinafter sometimes called City). Special Term granted both motions in *100 part, reducing the County’s sales tax from 1% to %%, and the City’s utility tax from 3% to 2%%, as hereinafter more fully stated. The Appellate Division modified the judgment, holding that the sales tax levied by the County is invalid insofar as it applies to transactions covered by the City’s utility tax after January 1, 1957, and that the City had the prior right to levy such utility tax under chapter 278 of the Laws of 1947, as amended.
Chapter 278 of the Laws of 1947, referred to as the “ Enabling Act ”, provided (§ 1):
“ any county of the state except a county wholly within a city, is hereby authorized and empowered, for educational purposes only, to adopt * * * resolutions imposing in any such county * * #
“ (a) Taxes on retail sales of tangible personal property at a rate not in excess of two per cent of the receipts therefrom * * *; and compensating use taxes on such tangible personal property at a rate not in excess of two per cent of the consideration ”.
Section 2 of the act allowed the imposition by cities of over 100,000 and less than 1,000,000 population of “ Any of the taxes authorized by section one of this act during such time as and to the extent that the county within which such city lies does not impose such tax.”
On May 27, 1947 the Board of Supervisors of Erie County adopted two resolutions imposing retail sales and compensating use taxes in the amount of 1%. These resolutions are still in force, and proceeds of the taxes have since been used by the County for educational purposes (§§ 17, 19, respectively).
The Enabling Act was amended by chapter 651 of the Laws of 1948 to eliminate the requirement that the County impose the named taxes £ ‘ for educational purposes only”, and to define sales of tangible property so as to include sales of ££ gas, electricity, steam and refrigeration ”. Recognizing that this definition allowed an overlap of sales and utility taxes, it was then provided in subdivision (c) of section 1, dealing with the latter kind of tax, that “ If a tax is also imposed on any of the foregoing pursuant to paragraph (a) of this section [the sales tax], the tax rates shall be adjusted as provided in section four of this act. ’ ’ (Emphasis supplied.)
*101 The 1948 statute also amended section 2 so as to provide: “ any city of the state having a population of over twenty-five thousand and less than one million * * * is hereby authorized and empowered, subject to the provisions of section four of this act, to adopt and amend local laws imposing in any such city any of the taxes authorized by section one of this act”. Section 4 of the act provided, insofar as here pertinent: “ No transaction, which, as used in this paragraph, shall include any privilege or use, shall be taxed pursuant to this act by any county or by any city located therein, or by both, at an aggregate rate in excess of the highest rate fixed by any single paragraph of section one. If a transaction is taxed by both a county and a city, the city tax rate on such transaction shall be deemed to be reduced (or the entire tax eliminated, if necessary) to the extent necessary to comply with the foregoing requirement.” Thus it is clear that under the law as it stood after the amendments in 1948, the County had the prior right to levy any of the taxes specified in section 1 of the act, to the exclusion of the City.
In 1950, however, the Enabling Act was drastically revised. These amendments were made to ‘1 carry out the recommendations of the State Comptroller’s Committee on Local Non-Property Taxes” (see. fn. to L. 1950, ch. 589; Governor’s Memorandum, 1950 Leg. Ann., pp. 354, 318). The Report, a copy of which was filed in the bill jacket, stated (pp. 8-9): “ The purpose of the Committee’s recommendation is to give cities and counties the right to impose certain non-property taxes with assurance that the other unit of government will not pre-empt the tax.” (Emphasis supplied.) The statutory language with which we are here primarily concerned is set forth in the amended section 4, which so far as here pertinent provides:
“No transaction, which, as used in this paragraph, shall include any privilege or use, shall be taxed pursuant to this act by any county or by any city located therein, or by both, at an aggregate rate in excess of the highest rate fixed by any single paragraph of section one of this act. If a transaction is taxed by both a county and a city, the rate of the tax on such transaction imposed by the county or city not having prior right thereto shall be deemed to be reduced (or the entire tax elimi *102 nated, if necessary) to the extent necessary to comply with the foregoing requirement. [Emphasis supplied.]
* * *
Where a county contains one or more cities, the county shall have prior right to impose:
1. Taxes described in paragraphs (d), (f) and (g) of section one of this act, and
2. Taxes described in paragraphs (a) and (h) of section 1 of this act to the extent of one-half the maximum rates authorized by such paragraphs, except as otherwise provided in this section.
Each city in such a county shall have prior right to impose:
1. Taxes described in paragraphs (b), (c), (e) and (i) of section one of this act, and
2. Taxes described in paragraphs (a) and (h) of section one of this act to the extent of one-half the maximum rates authorized by such paragraphs, except as otherwise provided in this section.” (Emphasis supplied.)
(Then follows a “However” provision stating that under certain conditions, not claimed to exist here, a county may have a prior right to impose a 1%% sales tax.) Continuing: “ For the purposes of this section, the term ‘ prior right ’ shall mean the preferential right to impose any tax described in section one of this act and thereby to pre-empt such tax and to preclude another municipality from imposing or continuing the imposition of such tax to the extent that such right is exercised.”
By a Local Law, effective July 1, 1954, the City imposed a 2% utility consumption tax upon the use of gas, electricity, refrigeration, steam or related service for domestic or commercial use; and a 3% tax on the use of water, telephone or telegraph service. This law was extended in effect through June 30, 1956, by a 1955 Local Law. In a Local Law of 1956 it was stated that the prevailing rates would continue in effect until December 31, 1956, but that as of January 1, 1957 the City’s tax on gas, electricity, refrigeration, steam or related service would be increased to 3%. Since the maximum allowable rate of tax is stated by section 4 to be “ the highest rate fixed by any single paragraph of section one ’ ’, which under *103 subdivision (c) of section 1 of the act (as to gas, electricity, etc.) is 3%, it is clear that a question of priority to tax between the County, which has imposed a 1% sales tax, and the City, which has imposed a 3% utility tax, arose as of January 1,1957.
The County bases its claim of priority to tax on that language in section 4 giving it a prior right to impose a sales tax to the extent of one half the maximum rates authorized, namely, 1%, while the City bases its claim of prior right on that language in section 4 which grants the City the prior right to impose a utility consumption tax, namely, not in excess of 3%, and the further fact that the grant of priority on which the County bases its claim contains an exception clause presently to be considered. The statute clearly supports both the claims of ‘1 prior right ’ ’ to impose the tax, but that does not mean that both may receive the full rates claimed, since together they exceed 3%.
As will be noted from the statute as hereinbefore set forth, it first grants the County prior right to impose taxes described in three named paragraphs of section 1— (d) (on liquor license fees); (f) (on coin-operated amusement devices), and (g) (on motor vehicle use). It also grants the City prior right to impose taxes described in four named paragraphs of section 1 — (b) (on restaurant sales); (c) (on utilities); (e) (on admissions to amusement places), and (i) (on hotel room occupancies). Following the paragraphs granting both their aforesaid prior rights, the statute in two identical paragraphs gives a prior right to each to impose sales and compensating use taxes “ to the extent of one-half the maximum rates [2%] * * * except as otherwise provided in this section ’ ’. There then follows a provision beginning with the word “ However ”, which in effect and under certain conditions (not present here) gives the County a prior right to impose a 11/z% sales and compensating use tax (instead of 1%, one half the maximum rate).
As we read the statute, by placing the phrase “ except as otherwise provided in this section” at the end rather than at the beginning of the sentence, it would appear that the Legislature intended to modify the language immediately preceding, namely, “one-half the maximum rates authorized”, and to refer solely to the “ However ” proviso following. This con *104 struction of the statute is completely supported by the Report of the “ State Comptroller’s Committee on Local Non-Property Taxes ’ ’, which in Recommendation 6 so far as pertinent stated (1) that the City should be given a prior right to tax consumers’ utility bills, (2) that the City and County should “ each be given a prior right to one half of the rate of the retail sales and business privilege taxes ” and then follows the “ However ” proviso (Report, p. 9; see, also, p. 2; Committee Memorandum, 1950 Leg. Ann., p. 318). It will be noted that the Report of the Comptroller’s Committee and the Memoranda of the Committee submitted in support of the bill do not contain the language of exception found in the statute.
It seems quite obvious that the language of the exception was inserted by the draftsman of the measure only because this priority appears in the bill in two separate places, and was intended to be related to the ‘ ‘ However ’ ’ provision in this way. That the law as enacted was not intended to vary from the Comptroller’s Committee’s recommendation is made clear by the footnote to the statute itself, viz.: ‘ ‘ This amendment carries out recommendations of the State Comptroller’s Committee on Local Non-Property Taxes ”; State Comptroller Moore’s letter of April 6,1950, to the Governor, found in the bill jacket, which says: ‘ ‘ This bill carries out recommendations * * * 6 * * * which are stated and explained in the accompanying Report and the Governor’s Memoranda on this bill (1950 Leg. Ann., p. 354), which says: “ These three bills [including eh. 589] * * * carry out the recommendations of the State Comptroller’s Committee on Local Non-Property Taxes.” In the interpretation of this statute, we should give heed to these oft-reiterated statements that the lawmakers were seeking to carry out the recommendations in the Committee’s Report, and it should not be read, as the City argues, to make the County’s “ prior right ” to levy the sales tax subordinate to the City’s prior right to impose the utility consumption tax.
We have here a case where each of the taxes is levied by municipalities having the same prior right to impose each tax. In such a situation, section 4 does not provide for elimination of either fax, since that section expressly states that “ If a transaction is taxed by both a county and a city, the rate of the tax on such transaction imposed by the county or city not having *105 prior right thereto shall he deemed to he reduced (or the entire tax eliminated, if necessary) to the extent necessary (Italics supplied.)
Bather, for a resolution of the issue arising because of the overlapping of the sales and utility consumption taxes, we turn to the statute which deals with multiple taxation in just such a case. There we find in subdivision (c) of section 1, dealing with the right to levy a utility consumption tax, the provision: “ If a tax is also imposed on any of the foregoing pursuant to paragraph (a) of this section [the sales tax], the tax rates shall be adjusted as provided in section four of this act ” (emphasis supplied).
The adjustment required so as to make the maximum amount of the tax on a single transaction no more than the 3% allowed under subdivision (c) of section 1, treats both municipalities as having the right to derive revenue from the tax in proportion to the amount of the tax legally imposed. Thus in this case, since the aggregate of both taxes imposed is 4%, and the allowable aggregate is but 3%, proportionate reductions are necessary to make the adjustment, and the City is therefore entitled to %ths of the maximum tax of 3%, or 2%%, and the County ]4th of 3% or %%. This construction of the statute and allocation of tax is in accordance with that reached by Special Term.
Arguments advanced by the County to the effect that its priority is superior to that of the City are wholly without merit. They are based largely on former statutes, since amended. As previously stated, both municipalities are given an equal prior right to impose the taxes at issue here; hence the adjustment provision comes into operation. Not only does a reading of the statute on its face lead to this conclusion — and the Report of the State Comptroller’s Committee definitely support it — but justice and equity likewise justify it. Both municipalities have equal priorities; they must adjust them here according to the mandate of the statute, which follows the pattern of the rights of claimants or creditors in the same category in other branches of our law. Respondent’s position is not only contrary to the statute as we construe it, and contrary to the manifest intent of the Comptroller’s Committee Report carried out by the Legislature, but is also harsh and inequitable, and would take from the County, we are told, some $350,000 annually, moneys appro *106 printed for educational purposes since 1947. The Legislature could hardly have intended such result.
A final point urged by the County is that since the reduction of its tax will result in a decrease of revenues to the school boards to which it has made tax distributions, the City was required to give notice to those school districts when imposing the tax, pursuant to subdivision (e) of section 11, and, having failed to do so, the City tax law is wholly invalid. This statute deals with the six months’ notice provision in the event of the decrease or elimination of (1) county-imposed taxes set aside for educational purposes or for distribution to cities or other areas, and (2) of city-imposed taxes pursuant to section 3-b. As both courts below have held, the statute has no application to the case at bar. The County has not by any local law decreased or eliminated any such taxes. If it had, the statute would apply. Neither has the City; it has instead increased the taxes; no taxes were imposed by it pursuant to section 3-b and none was eliminated or decreased — indeed section 3-b has no application to cities like Buffalo of over 125,000 population nor to taxes authorized by subdivision (c) of section 1. Thus subdivision (e) of section 11 does not sustain the County’s contention.
Insofar as the City has attempted to impinge on the right of the County to collect its own tax, the net collection of which the latter has each year set aside for educational purposes, any notice that might be required is governed, not by subdivision (e) of section 11, but by section 4, and no claim is made in this litigation that such notice was not given. In this connection it may be noted that the City’s relevant Local Law was enacted on June 25, 1956, more than six months prior to the effective date of the increase to 3%, that the statutory notice may be waived, and that such notice is not required to be in writing as under subdivision (e) of section 11.
The judgment of the Appellate Division should be reversed, and the judgment of Special Term reinstated, without costs.
Chief Judge Conway and Judges Desmond, Dye, Fuld, Van Voorhis and Burke concur.
Judgment reversed, etc.